United States District Court
District of Massachusetts

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>          v.<br><br>**DUSTIN J. DeNUNZIO, ANTHONY GATTINERI and CHARLES A. LIGHTBODY,**<br><br>          Defendants. | Criminal Action No.<br>14-10284-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Defendants Dustin DeNunzio ("DeNunzio"), Anthony Gattineri ("Gattineri") and Charles Lightbody ("Lightbody") allegedly orchestrated a scheme to conceal Lightbody's continued financial interest in a real estate holding company, FBT Everett Realty LLC ("FBT"), that owned a parcel of undeveloped commercial property in Everett, Massachusetts ("the Everett Parcel"). FBT wanted to sell the Everett Parcel to Wynn Resorts Limited LLC ("Wynn") as a prospective casino resort location but purportedly feared that Lightbody's criminal past would undercut that possibility.

The government contends that defendants set out to hide Lightbody's interest from (1) Wynn, which eventually entered into a contract with FBT to retain the option to purchase the land in the event it received a casino license from the

Commonwealth of Massachusetts and (2) the Investigations and Enforcement Bureau ("IEB") of the Massachusetts Gaming Commission ("MGC") during its 2013 investigation into Wynn's casino license application.  In October, 2014, defendants were indicted by a grand jury with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371, and one count of substantive wire fraud, in violation of 18 U.S.C. § 1343.

Currently before the Court are two motions filed by defendants DeNunzio and Gattineri that proffer alternate reasons to dismiss or strike at least part of the indictment.  For the reasons that follow, both motions will be denied.

## I. Background

In November 2011, the Massachusetts legislature passed the Massachusetts Expanded Gaming Act.  See 2011 Mass. Acts c. 194; M.G.L. c. 23K.  The Act provides for up to three "Category 1" destination resort casino licenses, one of which encompasses the geographic area that includes Everett, Massachusetts.  The MGC was given responsibility for evaluating applicants for the Category 1 licenses.  To help with that task, the IEB investigated the suitability of casino license applicants and all parties in interest.

After the new casino law was enacted, FBT became interested in selling the Everett Parcel, which it had purchased for approximately $8 million in October, 2009, to a casino

developer.  By the fall of 2012, FBT was involved in negotiations with Wynn about a potential option contract for the Everett Parcel.  The government asserts that throughout that time, Lightbody retained his equity interest in FBT.

According to the government, in early December, 2012, defendants realized that they needed to take affirmative steps to hide Lightbody's ownership interest in the Everett Parcel.  Purportedly fearing that Lightbody's criminal history would be uncovered, defendants allegedly initiated a conspiracy to conceal Lightbody's interest.  The government contends defendant knew that, absent their scheme, Lightbody's criminal history would be discovered and that Wynn would either 1) be able to negotiate with FBT for a substantially lower price for the Everett Parcel or 2) pass on the Everett Parcel altogether as its choice for a casino location.  Moreover, defendants were concerned that revelations of Lightbody's continued interest in FBT would result in Wynn being deemed unsuitable as a casino license holder and unable to win approval from the MGC.

On December 19, 2012, Wynn entered into an option agreement with FBT for the Everett Parcel.  Wynn agreed to pay $100,000 per month to retain the right to purchase the Everett Parcel for $75 million in the event that Wynn was able to obtain the Category 1 license for the region.

3

According to the Indictment, defendants had allegedly already arranged to remove Lightbody's name from FBT ownership documents and DeNunzio had asked an attorney for FBT to report to Wynn representatives that Lightbody either no longer had an interest or was in the process of divesting his interest. A Memorandum of Transfer and a Promissory Note purporting to convey Lightbody's interest were prepared and dated December 14, 2012, but were not executed at that time.

Shortly thereafter, on January 14, 2013, Wynn submitted its application for the license which proposed the Everett Parcel as the site for the casino.[1]

On January 17, 2013, prior to the execution of the buy-out documents, Wynn's general counsel sent an email to DeNunzio requesting that DeNunzio provide Wynn with the names of FBT's present equity owners. In response, DeNunzio represented that, as of that date, Lightbody did not retain an "interest" in FBT. Approximately ten days later, Lightbody and Gattineri executed the ostensibly fraudulent documents that transferred Lightbody's ownership interest in FBT to Gattineri for $1.7 million.[2]

In July, 2013, during its suitability investigation of Wynn, the IEB interviewed defendants about the ownership of the

---

[1] The application required a $400,000, non-refundable deposit.
[2] Moreover, it was not until June, 2014 that Gattineri finally paid Lightbody in full for his equity stake in FBT.

4

Everett Parcel.  The government asserts that, in his first interview with the IEB on July 9, 2013, DeNunzio lied to investigators and reported that Lightbody had transferred his equity interest in the land in the summer of 2012.

Immediately after his initial interview, DeNunzio allegedly backdated the buy-out documents to correspond with the answer he gave the IEB.  On July 10, 2013, DeNunzio had both Lightbody and Gattineri sign the amended Memorandum of Transfer and Promissory Note backdated so as to have an effective date in the summer of 2012.  The government contends the backdating was further intended to conceal defendants' scheme from investigators and, thus, ensure that Wynn would be unaware of Lightbody's history and ultimately be able to exercise its option to purchase the Everett Parcel upon winning approval for the casino license.

According to the government, only after the relevant time period in which the purported fraud took place did Wynn and the MGC learn of defendants' alleged scheme.  Wynn then utilized that revelation to re-negotiate with FBT a substantially lower purchase price of $25 million for the Everett Parcel in the event it won the casino license.  In November, 2014, Wynn was awarded the casino license by the MGC and purchased the Everett Parcel.  The closing of that purchase occurred in January, 2015, and Wynn's attempt to develop a casino on that property remains ongoing.

## II. Motions to Dismiss

DeNunzio and Gattineri jointly filed two separate motions to dismiss. The first motion seeks to dismiss or strike the indictment, in part, on the grounds that the government cannot prove a "scheme to defraud" Wynn solely on the basis of defendants' alleged misrepresentations to the IEB. The second motion seeks to dismiss the indictment in its entirety because it fails to set forth a "scheme to defraud" Wynn based on defendants' alleged misrepresentations to Wynn. Despite defendants' insistence to the contrary, the Court agrees with the government that the motions are appropriately considered as one.

### A. Legal Standard

The elements constituting the crime of wire fraud under 18 U.S.C. § 1343 include

> (1) a scheme or artifice to defraud using false or fraudulent premises; (2) the defendant's knowing or willing participation in the scheme or artifice with the intent to defraud; and (3) the use of the interstate wires in furtherance of the scheme.

United States v. Foley, 783 F.3d 7, 13 (1st Cir. 2015) (citation omitted). Moreover, the false or fraudulent statement needs to be material. Id.

When considering a motion to dismiss in a criminal case, a court accepts the factual allegations in the indictment as true. Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16

(1952). Such a motion is properly directed only to the question of the validity of the indictment on its face. United States v. Marbelt, 129 F. Supp. 2d 49, 56 (D. Mass. 2000). An indictment is ripe for dismissal if the facts demonstrate that, as a matter of law, the prosecution will not be able to prove each of the elements of the charged offense. United States v. Huet, 665 F.3d 588, 596-97 (3d Cir. 2012).

### B. Application

The joint motions of DeNunzio and Gattineri propound three primary arguments for dismissal: 1) the statements made to the IEB cannot support a prosecution for a scheme to defraud Wynn, 2) the government has failed to allege that defendants intended to cause financial injury to Wynn and 3) the purportedly fraudulent statements were not material to Wynn.

#### 1. Misrepresentations to the IEB

First, defendants contend that because the MGC's regulatory role was not to protect Wynn or its corporate funds, they cannot be convicted of defrauding Wynn solely on the basis of statements they made to the IEB. In support of their position, DeNunzio and Gattineri rely on two controlling decisions, the Supreme Court's opinion in Cleveland v. United States, 531 U.S. 12 (2000), and the First Circuit Court of Appeals' opinion in United States v. Christopher, 142 F.3d 46 (1st Cir. 1998).

7

Those decisions, whether viewed individually or as a whole, do not, however, support defendants' arguments.

In Cleveland, the Supreme Court unanimously held that a state gaming license is not "property" in the hands of the governmental agency for purposes of the mail fraud statute. 531 U.S. at 26-27.  Accordingly, a scheme to obtain a gaming license from state regulators by false pretenses cannot support a conviction for mail fraud. Id. at 15.  Thus, the Cleveland decision would foreclose a hypothetical prosecution for wire fraud in which Wynn executives made false representations to the MGC in order to obtain a casino license.  It does not, however, follow that defendants cannot be convicted of wire fraud on the basis of their purportedly false statements to the IEB that were part of a larger scheme to defraud Wynn out of money.

Defendants argue further that the Christopher decision holds that the federal wire fraud statute is implicated only if the state regulator has some affirmative obligation to protect the monetary interests of a private party that is the target of a scheme to defraud that same private party.  Because, here, the MGC was neither the guardian of Wynn's bank account nor had any role in protecting its financial interests, defendants aver that their statements to the IEB cannot support a conviction for wire fraud.

8

Defendants have clung to one illustrative example that the First Circuit provided in its broad rejection of a requirement that "the party deprived of money ... be the same party who is actually deceived [by the wire fraud]." Christopher, 142 F.3d at 54.  The Christopher decision is not, however, limited in its reach to situations where a regulatory body was tasked with protecting the monetary interests of others.  Instead, the First Circuit held that the statutory language was "broad enough to include a wide variety of deceptions intended to deprive another of money" and was not dependent on a convergence between the deceived party and the party deprived of money by the fraudulent scheme. Id.; see also United States v. Seidling, 737 F.3d 1155, 1160-61 & n.2 (7th Cir. 2013); United States v. Gaw, No. 13-cr-10194-GAO, 2014 WL 2435269, at *2 (D. Mass. May 30, 2014) (denying motion to dismiss indictment for mail fraud where defendant allegedly made misrepresentations to state licensing agency as part of scheme to defraud third party out of money).

Here, the government has alleged a scheme to defraud that includes misrepresentations made to both Wynn and the MGC.  At this stage of the proceedings, those allegations, taken as true, are sufficient to require the denial of defendants' motion.  Moreover, if the government fails to establish misrepresentations made to Wynn, it can still prove wire fraud against defendants so long as it establishes that defendants

9

made materially false representations to the IEB as part of a scheme to defraud Wynn out of money.  Neither the decision in Cleveland nor the decision in Christopher holds otherwise.

### 2. Intent to Harm or Financially Injure Wynn

Next, defendants argue that the government has failed adequately to plead a scheme to defraud Wynn because it has not alleged that defendants' actions intended to harm Wynn or otherwise cause Wynn financial or economic injury.  According to defendants, proof of such an intent to harm or injure is a prerequisite for a conviction for wire fraud and is absent here because Wynn "got what it bargained for" by virtue of the award of the casino license and its purchase of the Everett Parcel from FBT.

Defendants are mistaken in their assertion that an intent to harm or financially injure is required for wire fraud.  The First Circuit has, on multiple occasions, held that in fraud cases the government must prove merely that the defendant had an intent to defraud. See, e.g., United States v. Kendrick, 221 F.3d 19, 29 (1st Cir. 2000) (en banc) (holding that, based on common law understanding of fraud, the intent element for fraud statutes is an intent to deceive in order to obtain money or other property and that intent to harm is not required), abrogated on other grounds by Loughrin v. United States, 134 S. Ct. 2384 (2014); United States v. Pimentel, 380 F.3d 575, 585

(1st Cir. 2004) (remarking that "[i]n order to find a scheme to defraud, the jury simply ha[s] to determine that [defendant] was attempting to wrong one in his property rights by dishonest methods or schemes") (quoting McNally v. United States, 483 U.S. 350, 358 (1987)).

Other circuits concur that intent to harm is not the same thing, nor is it required to establish the requisite intent to defraud for purposes of wire fraud. See, e.g., United States v. Welch, 327 F.3d 1081, 1104-06 (10th Cir. 2003) (rejecting argument that intent to cause economic harm or injury is an element of federal wire fraud statute and holding that "the required intent is simply an intent to defraud which the [g]overnment may establish by various means", including introducing evidence that would enable a jury to infer that defendant intended to deprive another of money); see also United States v. Steffen, 687 F.3d 1104, 1115 (8th Cir. 2012). Instead, an intent to harm, or evidence of actual harm, is only one means of establishing the necessary intent to defraud. Welch, 327 F.3d at 1104-05 (collecting cases); Kendrick, 221 F.3d at 29.

Here, the indictment alleges a scheme in which defendants attempted to defraud Wynn of money by making false representations to Wynn and to the IEB.  The government

specifically alleges that defendants knew the disclosure of Lightbody's criminal past

> would adversely impact FBT's negotiation of an option agreement for the Everett Parcel and Wynn's ability to secure a license for a destination resort casino located on the Everett Parcel.

The government contends that such allegations impliedly assert that defendants acted to achieve a more lucrative option contract with Wynn by withholding pertinent information regarding Lightbody's checkered past and, thus, adequately pleads that defendants had the requisite intent to defraud Wynn out of money.

The Court agrees. The information about Lightbody which, at this stage of the proceedings, the Court assumes was unbeknownst to Wynn during the relevant time frame, would have likely affected the amount of 1) the monthly installment payments owed by Wynn to retain an option and 2) the purchase price that FBT was able to negotiate for the Everett Parcel. As the government points out, months later, upon discovering that defendant concealed Lightbody's criminal history, Wynn did, in fact, renegotiate the purchase price downward from $75 million to $25 million. A jury could find that defendants' actions in actively concealing the information from Wynn was intended to inure to FBT's benefit at the expense of Wynn. See Pimentel, 380 F.3d at 585 (upholding conviction for mail fraud where jury

concluded that defendant lied about nature of his company's business in order to pay less in insurance premiums).

The claims in the indictment are thus more than sufficient to allege both a scheme to defraud Wynn out of money and the requisite intent to defraud and, accordingly, dismissal of the indictment against defendants is not warranted.

### 3.  Materiality

Importantly, the false representations that entail the scheme to defraud must be material. United States v. Appolon, 715 F.3d 363, 367-68 (1st Cir. 2013).  A false statement is deemed material so long as it "has a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." Id. at 368 (quoting Neder v. United States, 527 U.S. 1, 25 (1999)) (alteration in original).  That being said, the government is not required to prove that the false statement was actually relied on or necessarily led to monetary damages. Id.

Defendants contend that the information about Lightbody's criminal history that they supposedly concealed could not have influenced Wynn's decision to purchase the Everett Parcel and, therefore, was immaterial.  In support of their position, defendants point out that Wynn decided to pursue the casino license even after the indictment in this case became public. Accordingly, defendants assert that whether or not Lightbody had

a continued interest in FBT had no bearing on Wynn's eventual decision to purchase the Everett Parcel.

Defendants' argument misses the mark. The indictment alleges that Wynn was a victim of defendants' scheme to defraud and was unaware of Lightbody's criminal history during the relevant time periods, i.e., leading up to when Wynn decided to enter into the option agreement in December, 2012, and thereafter when DeNunzio sent Wynn an email containing the purportedly false statement. Because the Court must consider those allegations as true for purposes of the instant motion to dismiss, the ultimate determination of the materiality of defendants' purported misrepresentations is for the jury to determine after hearing all of the evidence during trial.[3] See United States v. Sharp, 749 F.3d 1267, 1280 (10th Cir. 2014) (materiality is "question of fact for the jury to decide"); see also Neder, 527 U.S. at 8, 25 (holding that materiality is an element of crime of wire fraud that ought to be included in jury instructions).

---

[3] In recent filings, defendants dispute that Wynn was unaware of Lightbody's criminal history. Needless to say, if the evidence at trial unequivocally reveals such knowledge by Wynn, defendants could not have engaged in a scheme to defraud Wynn because any attempted misrepresentations by defendants would not have been material as a matter of law and defendants may opt to move for a judgment of acquittal.

14

Although defendants argue that, as a matter of law, the government cannot establish materiality, they are mistaken. Materiality is determined by analyzing whether a statement was capable of influencing a decision, not whether it did, in fact, influence a decision. United States v. Roberts, 534 F.3d 560, 571 (7th Cir. 2008) (noting that "materiality inquiry addresses the nature of the statements made rather than the defendant's actual ability to influence"). Defendants thus incorrectly make an argument against materiality that focuses principally on Wynn's actual decision to continue to pursue the casino license after learning of the indictment in this case in October, 2014.

Even if Wynn's subsequent conduct was appropriately to be considered in the materiality analysis, it is entirely possible that, by the time the indictment issued, Wynn felt constrained by its prior investment of time and money in the Everett Parcel to continue with its application.[4] That decision does not necessarily render immaterial defendants' alleged misrepresentation made at the time of Wynn's initial decision to enter into the option contract.

In fact, upon learning of defendants' concealment of Lightbody's criminal history in the summer of 2013, Wynn insisted on a substantial reduction in the purchase price for

---

[4] Wynn had made multiple $100,000 monthly payments to FBT under the option contact.

15

the Everett Parcel in the event it won the casino license.  Such a price reduction seems to support the government's position that knowledge of Lightbody's criminal history was capable of influencing Wynn.  Nevertheless, as the Court has already found, the critical determination of materiality will need to be made by the jury.

Accordingly, because defendants' have failed to establish that their alleged concealment of Lightbody's criminal history was immaterial as a matter of law, the Court will not dismiss the indictment.

**ORDER**

In accordance with the foregoing, both the motion to dismiss (or strike) in part (Docket No. 143) and the motion to dismiss the indictment (Docket No. 145) filed by defendants DeNunzio and Gattineri are **DENIED**.

**So ordered.**

                                              /s/ Nathaniel M. Gorton  
                                              Nathaniel M. Gorton  
                                              United States District Judge  
Dated September 9, 2015