United States District Court
District of Massachusetts

| | |
|---|---|
| United States of America, <br><br> v. <br><br> (1) Dustin J. DeNunzio, <br> (2) Anthony Gattineri, and <br> (3) Charles A. Lightbody, <br><br> Defendants. | Criminal Action No. <br> 14-cr-10284-NMG |

MEMORANDUM & ORDER

GORTON, J.

The instant dispute arises out of the request of Anthony Gattineri ("Gattineri" or "defendant") to modify two protective orders entered by this Court in the above-captioned action for the purpose of pursuing claims in a civil action pending before United States District Judge F. Dennis Saylor IV of this Court, captioned Gattineri v. Wynn, MA, LLC et al., No. 18-cv-112299 ("the Civil Litigation").

I. **Background**

Gattineri was indicted by a federal grand jury, along with two other individuals, on one count of wire fraud in violation of 18 U.S.C. § 1343 and one count of conspiracy to commit wire

fraud in violation of 18 U.S.C. § 371. Following a 14-day trial, Gattineri and his codefendants were acquitted of all charges.

A.  **Factual Background**

Gattineri is a 46.69% member of FBT Everett Realty, LLC ("FBT"), the former owner of a parcel of land in Everett and Boston, Massachusetts upon which the Encore Boston Harbor Casino and Resort now operates ("the Casino Parcel"). In December, 2012, FBT entered into an agreement with Wynn Resorts Ltd ("Wynn Resorts") and Wynn MA, LLC (collectively with Wynn Resorts, "Wynn") providing Wynn the option to purchase the Casino Parcel for $75 million if Wynn obtained a casino license for the Casino Parcel ("the Option Agreement").

In January, 2013, Wynn filed an application with the Massachusetts Gaming Commission ("the Commission") for a casino license for the Casino Parcel. The Commission, through its Investigation Enforcement Bureau ("the IEB"), raised concerns about the ownership of FBT which jeopardized Wynn's application. In response to those and other concerns, Wynn hired an appraiser to determine the "non-casino value" of the land to ensure that the Option Agreement did not include a "casino premium." Following the appraisal, Wynn proposed to FBT and, thereafter,

the Commission, to lower its offer for the Casino Parcel to $35 million. Despite vigorous opposition by Gattineri, FBT accepted Wynn's offer to buy the Casino Parcel for $40 million less than its original offer.

In December, 2013, the Commission tentatively accepted Wynn's proposal on the mandatory condition that each of the owners of FBT submit executed certifications, under oath, attesting to their ownership of FBT for themselves only and for no other persons or entities. Gattineri was the only member of FBT who refused to sign such a certification.

Gattineri alleges that beginning in early 2014, representatives from Wynn implored him to sign the certification. He specifically recalls that Robert DeSalvio ("DeSalvio"), a Wynn senior executive, informed Gattineri that he had been assigned to do "whatever it takes" to convince Gattineri to sign the certification. Gattineri alleges that at a meeting with DeSalvio in San Diego, California in June, 2014, DeSalvio offered to "make [Gattineri] whole" by paying him his share of the $40 million dollar price reduction for the Casino Parcel ($18,676,000) if Gattineri would sign the certification.

On the same day, Gattineri signed the certification. Three months thereafter, the Commission awarded Wynn the casino license and Wynn purchased the Casino Parcel for $35 million.

In June, 2018, Gattineri filed his complaint against Wynn in the Civil Litigation alleging breach of contract, unfair and deceptive trade practices in violation of Mass. Gen. Law c. 93A and common law fraud arising from Wynn's refusal to pay Gattineri the $18.676 million dollars it allegedly promised to pay in return for his signed certification.

**B.  The Protective Orders and The Protected Materials**

Prior to trial in the criminal action, this Court entered protective orders on October 31, 2014, and August 5, 2015. Gattineri specifically reserved his right to modify or amend both protective orders or otherwise to seek permission to disclose protected materials.

Gattineri now seeks such relief, requesting that the Court amend the Protective Orders for the limited purpose of producing to his attorney in the Civil Litigation the following materials ("the Protected Materials"):

Relating to Kim Sinatra ("Sinatra"):
- 07/30/2013: Sworn Interview in the Matter of the Application of Wynn Massachusetts, LLC

- 09/10/2013: Sworn Interview in the Matter of the Application of Wynn Massachusetts, LLC
- 01/30/2014: FBI 302 Report
- 07/17/2014: Grand Jury Testimony
- 02/11/2015: FBI 302 Report

Relating to Matthew Maddox ("Maddox"):

- 06/12/2013: Two Reports of Investigation by the Massachusetts Gaming Commission/Investigations and Enforcement Bureau
- 07/30/2013: Sworn Interview in the Matter of the Application of Wynn Massachusetts, LLC
- 07/16/2014: Grand Jury Testimony
- 02/11/2015: FBI 302 Report

## II. Motion to Amend the Protective Orders

### A. Legal Standard

Pursuant to Fed. R. Crim. P. 16(d) a court may enter a protective order in a criminal case for "good cause." The First Circuit has not articulated a definitive standard for the modification or amendment of a protective order entered in a criminal case, although courts undeniably retain that power as part of their "inherent authority" over the discovery process. United States v. Bulger, 283 F.R.D. 46, 52-53 (D. Mass. 2012). This Court agrees with the majority of courts which have considered the issue and will apply the "good cause" requirement to Gattineri's motion to amend the protective orders, drawing from analogous civil precedent. See id.; see also United States

v. Swartz, 945 F. Supp. 2d 216, 219-20 (D. Mass. 2013); United States v. Nardozzi, No. 18-10017, 2018 WL 4571655, *2 (D. Mass. Sept. 24, 2018); United States v. O'Brien, No. 12-40026, 2014 WL 204695, *4 (D. Mass. Jan. 17, 2014).

The "good cause" requirement impels a district court to "weigh[ ] and balanc[e] a number of relevant factors" including, any change in circumstances necessitating modification, a party's reliance upon the protective order when it produced discovery materials and the privacy interests of third parties. See Bulger, 283 F.R.D. at 53-55.

Furthermore, the government submits that several of the Protected Materials relate to grand jury proceedings and are therefore subject to the additional protection of Fed. R. Crim. P. 6(e). Rule 6(e) provides strict secrecy requirements and disclosure limitations for matters occurring before a grand jury. Fed. R. Crim. P. 6(e)(2).

B. **Application**

1. **Scope of Rule 6(e)**

The government asserts that each of the Protected Materials is subject to the requirement of Rule 6(e). Gattineri responds that only three of the seven Protected Materials are subject to Rule 6(e): 1) the sworn interview of Sinatra on July 30, 2013,

in the Matter of the Application of Wynn Massachusetts, LLC; 2) the Grand Jury testimony of Sinatra; and 3) the Grand Jury testimony of Maddox. Gattineri submits that the remaining seven Protected Materials fall outside of the scope of Rule 6(e) because they are neither grand jury testimony nor marked as grand jury exhibits.

As has been consistently recognized by the United States Supreme Court, "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 218 (1979). Consequently, the scope of Rule 6(e) is "necessarily broad". Church of Scientology Intern. v. U.S. Dep't of Justice, 30 F.3d 224, 235-36 (1st Cir. 1994). Grand jury exhibits and related materials that are testimonial in nature "ordinarily may be withheld. . . ." Id. at 235.

Conversely, documents "created for purposes independent of grand jury investigations" are not subject to the same presumption of secrecy. Id. With respect to such materials, the government must demonstrate that "release of the sought-after documents would compromise the secrecy of the grand jury process." Id. Mere exposure to the grand jury is insufficient to protect information from disclosure. Id.

Rule 6(e) is not, however, a complete bar to disclosure. Indeed, a court may authorize the disclosure of such materials "preliminarily to or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i). To authorize such a disclosure, the court must be satisfied that the requesting party has demonstrated that

> the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure if greater than the need for continued secrecy, and that their request is structured to cover only the material so needed.

Douglas Oil Co. of California, 441 U.S. at 222.

With respect to the three Protected Materials that Gattineri agrees are subject to Rule 6(e), Gattineri submits that 1) disclosure is necessary for effective witness impeachment in the Civil Litigation, 2) the investigation to which the requested materials pertain has been concluded for several years and 3) his request is narrowly tailored to allow disclosure only to his counsel in the Civil Litigation.

The Court is not convinced that Gattineri has demonstrated that his need for the materials meets the high bar of Rule 6(e). Indeed, he merely states that the materials could serve to impeach Sinatra and Maddox in the Civil Litigation but provides no underlying argument in support of that surmise. Even more

problematic is Gattineri's apparent admission that he has not even attempted to utilize the civil discovery tools available to him in the Civil Litigation. Gattineri has not, therefore, established that his need for the materials outweighs the need for continued secrecy.

With respect to the remaining seven Protected Materials, this Court agrees with Gattineri that the protections of Rule 6(e) do not apply. The materials are, however, still subject to the protective orders.

### 2. Remaining Materials

The remaining Protected Materials (collectively, "the Remaining Materials") are: 1) the sworn interview of Sinatra on September 20, 2013, in the Matter of the Application of Wynn Massachusetts, LLC; 2) the sworn interview of Maddox in the Matter of the Application of Wynn Massachusetts, LLC; 3) and 4) two reports of investigation by the Massachusetts Gaming Commission/Investigations and Enforcement Bureau regarding Maddox; and 5), 6) and 7) three FBI 302 Reports, two concerning Sinatra and one concerning Maddox.

With respect to the Remaining Materials, the Court hereby considers whether there exists good cause to amend the protective orders and allow disclosure. See Bulger, 283 F.R.D.

at 52. In doing so, the Court weighs and balances relevant factors, including prejudice to either party, changed circumstances, reliance and the privacy interests of third parties. See id. at 53-55.

Gattineri claims that he will suffer prejudice if the Court does not allow disclosure because the Remaining Materials relate to allegations in the Civil Litigation and, therefore, may serve as important impeachment evidence. As explained above, however, that argument is unpersuasive in light of Gattineri's failure to seek such information using the standard tools of discovery provided to him by the Federal Rules of Civil Procedure. Accordingly, the lack of any demonstrated prejudice to Gattineri weighs heavily against disclosure.

The Court discerns no changed circumstances and Gattineri does not proffer any. Indeed, the parties appear in virtually the same position as when the protective orders were entered. Therefore, this factor also weighs against amendment.

With respect to reliance, the government submits that the Protected Materials were subject to Fed. R. Crim. P. 6(e) and were produced under the assumption that the defendants would be precluded from disclosure unless expressly provided for in the

protective orders. The government's reliance on the protective orders, therefore, weighs against amendment.

Finally, Gattineri submits that the privacy interests of Sinatra and Maddox are not implicated because each testified extensively throughout the trial and before the Commission. The public testimony of an individual does not constitute a waiver by that person of all privacy interests with respect to those matters in perpetuity. Without reviewing all of the Remaining Materials, however, the Court cannot adequately assess the weight of this factor and, for that reason, finds it inconclusive.

Upon weighing and balancing the relevant factors, this Court concludes that good cause does not exist for amending the protective orders.

### ORDER

For the forgoing reasons, the motion of Anthony Gattineri to amend or modify the two protective orders entered in this criminal action on October 31, 2014, and August 5, 2015, (Docket No. 525) is **DENIED**.

**So ordered.**

Nathaniel M. Gorton
United States District Judge

Dated March 27, 2020